### In re BUNZL USA, INC., Relator.

No. 08–03–00306–CV.

Court of Appeals of Texas, El Paso.

Jan. 8, 2004.

Steven J. Blanco, Delgado, Acosta, Braden & Jones, P.C., El Paso, for Relator.

Yvonne Rangel, El Paso, for Respondent.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

In this mandamus proceeding, Bunzl USA, Inc. argues that the trial court abused its discretion by refusing to compel arbitration. We deny the requested writ.

### PROCEDURAL BACKGROUND

Manuel Avila filed suit against Bunzl USA, Inc., Bunzl Distribution, Inc., Bunzl Distribution USA, Inc., Bunzl Dallas, Inc., Paul Lorenzini, and Elizabeth Isam. He alleged that he was employed by the defendants as a sales representative between June 26, 1993 and November 29, 2001 and that he was terminated because of his race or ethnicity. He asserted causes of action for violations of the Texas Commission on Human Rights Act and for intentional infliction of emotional distress. Lorenzini, the president of Bunzl USA, Inc., filed a special appearance, which the court granted.

The remaining defendants filed a motion seeking to compel Avila to arbitrate his claims pursuant to the Federal Arbitration Act (FAA). They also filed a memorandum in support of their motion. Attached to the memorandum was a copy of a "Salesperson Employment Agreement," dated December 6, 1993, between Bunzl USA and Avila.

The Salesperson Employment Agreement recites that Avila desires to be employed or continue employment and that Bunzl desires to employ or continue to employ him. It further recites that Avila's position with Bunzl will provide him with access to Bunzl's customers and confidential or proprietary business information. The Agreement then sets out provisions common to a non-compete contract.

The Agreement also includes a paragraph labeled "Arbitration and Governing Law." This paragraph states:

[A]ny dispute arising out of, pursuant to, or relating to this Agreement, or to the employment or the termination of Employee by Company, shall be resolved by binding arbitration in St. Louis County, Missouri before one (1) arbitrator pursuant to the rules of the American Arbitration Association for commercial arbitration. This Agreement shall be interpreted in accordance with and governed by the law of Missouri. The sole function of the arbitrator is to interpret and enforce the Agreement under Missouri law, and ... the arbitrator shall have no authority to alter, amend, modify or change the Agreement. . . . .

The next paragraph provides, "No modification or amendment of any provision of this Agreement is effective unless it is in writing and signed by the parties to this Agreement."

The Agreement concludes with a signature block that has three lines. The first line is blank. The second line has "By:" in typewriting at the beginning of the line and the word "COMPANY" in typewriting beneath the line. "Bunzl/Papercraft" is printed by hand on the line. The third line has "EMPLOYEE" in typewriting beneath it. On the line is an illegible signature dated "12–6–93." No affidavit accompanied the copy of the Agreement that was attached to the memorandum.

At the hearing on the defendants' motion to compel arbitration, Avila's counsel maintained that the Agreement was not valid because, among other things, it was not properly signed by Bunzl. Counsel argued that the lack of a signature called into question whether the parties ever reached an agreement. The court also expressed concern over the missing signature, stating that the existence of an agreement to arbitrate was the defendants' "weakest point." The defendants' counsel responded to this argument by asserting that an arbitration agreement does not have to be signed to be valid. Neither side presented any evidence at this hearing or requested an evidentiary hearing. The court denied the motion to compel arbitration.

The defendants filed a motion to reconsider. They also filed a memorandum in support of this motion. The defendants argued in the memorandum that the missing signature does not render the Agreement unenforceable. They attached several documents to the memorandum, including a copy of the Salesperson Employment Agreement and the affidavit of Elizabeth Isam.[1] Isam averred that she is the regional human resources manager for Bunzl Distribution Southwest, L.P., which Avila wrongly named in this suit as Bunzl Dallas, Inc. She further stated that she is the custodian of records for Bunzl Southwest, that she maintains the personnel jackets of Bunzl employees within her region of authority, that the attached copy of the Salesperson Employment Agreement is "a true and accurate copy of Mr. Avila's Employment Agreement," that the Agreement was kept in his employment jacket so it could be reviewed if questions arose regarding the parties' rights and obligations under the Agreement, and that she personally reviewed the Agreement before Avila was terminated to ensure that Bunzl acted in accordance with its obligations under the Agreement.

The court conducted a hearing on the motion. Again, with the exception of the documents attached to the motion, neither party presented any evidence or requested an evidentiary hearing. The court denied the motion to reconsider.

### THE PARTIES' ARGUMENTS

Bunzl asserts that the trial court abused its discretion in refusing to compel arbitration. It argues that it presented overwhelming evidence that its employment relationship with Avila affected interstate commerce and that Avila's claims fall within the scope of the arbitration provision. Bunzl also argues, although it is the only relator in this proceeding, that all the defendants are entitled to invoke the arbitration provision under the doctrine of equitable estoppel. Finally, Bunzl argues that Missouri is the proper venue for the arbitration proceeding. Curiously, despite the trial court's statement that the absence of Bunzl's signature on the Agreement is the weakest part of its case, Bunzl's petition does not address this issue.

---

1. The other documents relate to whether the arbitration provision encompasses Avila's claims and whether the Agreement affects interstate commerce.

In his response, Avila argues that Bunzl failed to establish that the parties assented to the Agreement because Bunzl did not sign it, there was no evidence that the employee signature on the Agreement was his, and there was no other evidence to show that the parties assented to the Agreement's terms. Avila also argues that his claims do not fall within the scope of the arbitration provision.

 In its reply brief, Bunzl again fails to offer any argument regarding the absence of its signature. The only reference to this issue is an assertion that Avila did not "claim or argue to the Trial Court that the agreement presented was not the Parties' Agreement." Appended to this assertion is a footnote, which acknowledges that Avila argued below that the Agreement "was unenforceable because Bunzl had not signed the agreement." Bunzl then points out, without citation to the record, that it responded to this "spe-cious argument" in its motion for reconsideration.[23]

### STANDARD OF REVIEW

 A writ of mandamus will issue to correct a clear abuse of discretion when there is no other adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). There is no other adequate remedy at law when a trial court improperly denies a motion to compel arbitration under the FAA. *In re Halliburton Co.,* 80 S.W.3d 566, 573 (Tex. 2002); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992).

 A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker,* 827 S.W.2d at 839. With respect to the resolution of factual issues, this means that we may not substitute our judgment for that of the trial court, even if we would have decided the issue differently. *Id.* at

---

2. Avila's counsel argued before the trial court that the missing signature called into question whether Bunzl manifested assent to the Agreement. For example, in reference to the provision requiring modifications to be signed by the parties, counsel argued, "I would suggest to the Court that it's not reasonable to believe that they intended modifications or amendments to be required to be signed by the parties, but not the agreement itself to be signed by both parties." This was sufficient to preserve this issue for review. *See Weekley Homes, Inc. v. Jennings,* 936 S.W.2d 16, 18 (Tex.App.-San Antonio 1996, writ denied) (holding that party resisting arbitration preserved issue by raising it orally before the trial court and by pointing to controverting evidence within the movant's proof).

3. In oral argument before this Court, Bunzl did address the missing signature, claiming that the signature was not necessary for two reasons: (1) as a matter of law, a signature was not necessary to complete the contract; and (2) Avila's counsel judicially admitted that his client had entered the agreement which included the arbitration clause. We address the signature issue below. As to the statement by Avila's counsel, we cannot agree that it constituted a judicial admission.

A judicial admission is a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof. *Gunter v. Bailey,* 808 S.W.2d 163, 164 (Tex. App.-El Paso 1991, no writ). Such an admission may be by way of facts admitted by pleadings, by stipulation, and by formal declaration in open court by a party. *Id.* At the beginning of his argument to the trial court, Avila's counsel said merely: "First of all, Your Honor, I think it's very important—do you have the agreement the plaintiff—the agreement that my client entered into?" We do not find this was an admission that Avila was bound by the contract to arbitrate, but was simply directing the judge's attention to the item he wanted to discuss. This does not rise to the level of a clear, deliberate and unequivocal statement required to constitute a judicial admission. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000).

839–40. Instead, we may not overturn the trial court's decision unless that court could reasonably have reached only the opposite decision. *See id.* at 840. The relator has the burden of establishing that the trial court abused its discretion. *Id.*

■ With respect to the resolution of legal issues, our review is much less deferential. *Id.* The trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* Therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

### THE PROCEDURE TO BE FOLLOWED ON A MOTION TO COMPEL ARBITRATION

■ In *Tipps,* the Texas Supreme Court set out the procedure to be followed when a motion to compel arbitration has been filed:

> [T]he trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Tipps,* 842 S.W.2d at 269. In arriving at this procedure, the supreme court drew from established summary judgment procedure. *See id.; see also In re Jebbia,* 26 S.W.3d 753, 756–57 (Tex. App.-Houston [14th Dist.] 2000, orig. proceeding) ("A summary motion to compel arbitration is essentially a motion for partial summary judgment, subject to the same evidentiary standards.").

■ Our sister appellate courts have elaborated on the procedure set out in *Tipps. See, e.g., Jebbia,* 26 S.W.3d at 756–57; *Jennings,* 936 S.W.2d at 18–19;

*Prudential Sec. Inc. v. Banales,* 860 S.W.2d 594, 597 (Tex.App.-Corpus Christi 1993, orig. proceeding). The Fourteenth Court of Appeals explained the correct procedure this way:

> The party alleging an arbitration agreement must present complete summary proof of his "case in chief" that an agreement to arbitrate requires arbitration of the issues in dispute. If that summary proof intrinsically raises issues about the procedural enforceability of the agreement, the movant's summary proof should include any evidence that resolves those issues without creating an issue of material fact. Naturally, the non-movant, to resist summary arbitration, needs only to raise an issue of material fact about a necessary element of its opponent's "case in chief" or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate.
>
> If the movant has proven there is an arbitration agreement, as a matter of law, the court must compel arbitration, and a presumption arises that all disputed issues between the parties must be arbitrated. If issues of material fact remain about whether there is an enforceable agreement to arbitrate, the trial court must promptly allow the party claiming the right to arbitrate an evidentiary hearing on the matter.

*Jebbia,* 26 S.W.3d at 757 (citations omitted). We agree that this is the correct procedure for the trial court and the parties to follow.

### ESTABLISHING THE EXISTENCE OF AN ARBITRATION AGREEMENT

■ Public policy favors the submission of disputes to arbitration. *In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 566 (Tex.App.-Waco 2000, orig. proceeding). But arbitration is also a creature of contract. *Am. Heritage Life Ins.*

*Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003); *Ysleta Indep. Sch. Dist. v. Godinez*, 998 S.W.2d 700, 702 (Tex.App.-El Paso 1999, no pet.). Therefore, a party cannot be compelled to arbitrate a dispute unless he has agreed to do so. *Lang*, 321 F.3d at 537. A party seeking to compel arbitration must first establish that an arbitration agreement exists. *Id.* at 537; *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *In re Anaheim Angels Baseball Club, Inc.*, 993 S.W.2d 875, 877 (Tex.App.-El Paso 1999, orig. proceeding). When we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *Lang*, 321 F.3d at 537–38; *Jebbia*, 26 S.W.3d at 757. Instead, we apply standard contract principles to determine whether a valid arbitration agreement exists. *Lang*, 321 F.3d at 538; *Godinez*, 998 S.W.2d at 702.

▇▇▇▇ Under standard contract principles, the presence or absence of signatures on a written contract is relevant to determining whether the contract is binding on the parties. According to Corbin, if the parties have unconditionally assented to terms stated in an unsigned document, the document constitutes a binding written contract, regardless of whether it is signed. 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 2.10, at 168 (Joseph M. Perillo rev., 1993). But a party's signature on a written contract is "strong evidence" that the party unconditionally assented to its terms. *Id.* In the absence of a signature, other evidence must be relied upon to prove the party's unconditional assent. *Id.* Furthermore, the parties may provide that the signature of each party is a prerequisite to a binding written contract. *Id.* at 165.

The Texas Supreme Court has relied on these principles from Corbin to decide whether parties were bound by an instrument that only one party signed. *See Simmons & Simmons Constr. Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415 (Tex.1955). In *Rea*, a general contractor and a subcontractor orally agreed upon the terms of a contract, which the general contractor immediately reduced to a written instrument that included a signature block and provided for the furnishing of a bond after the instrument was signed. The general contractor then delivered the instrument to the subcontractor with directions to obtain a bond, sign the instrument, and return the instrument, along with the bond, so that the general contractor could sign the instrument. The general contractor also told the subcontractor to be available to begin work when the materials became available. *Id.* at 357, 286 S.W.2d at 417. After the subcontractor followed these instructions, the general contractor repudiated the agreement and refused to sign the instrument. *Id.* at 355, 286 S.W.2d at 416. The jury returned a verdict in favor of the subcontractor, finding that the parties intended for the written instrument to be binding regardless of whether it was signed by both parties. *Id.* at 355–56, 286 S.W.2d at 416–17.

In an opinion by Justice Calvert, the supreme court concluded that the evidence was legally insufficient to support the verdict. The court ruled that there was nothing in the general contractor's words or conduct that would reasonably raise an inference "that he intended to assent to the instrument in the absence of the signatures of the parties or that he intended to waive signing as a condition of such assent." *Id.* at 359, 286 S.W.2d at 419.

▇▇▇ Thus, the question of whether a written contract must be signed to be binding is a question of the parties' intent. *See, e.g., Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir.1996); *ABB Kraftwerke Aktiengesellschaft v. Browns-*

*ville Barge & Crane, Inc.,* 115 S.W.3d 287, 292 (Tex.App.-Corpus Christi 2003, no pet. h.). *But see McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 477 (Tex.App.-El Paso 1993, no writ) (stating, in dicta, that "execution and delivery of the contract with intent that it become mutual and binding on both parties" is an element of a binding contract). Therefore, it is generally a question for the fact finder to answer. *Scaife,* 100 F.3d at 410. In this regard, Texas law is in accord with Missouri law. *See, e.g., Stege v. Hoffman,* 822 S.W.2d 517, 518 (Mo.Ct.App.1991) ("A signature is not always essential to the binding force of an agreement and whether an unsigned writing constitutes a binding contract depends upon the parties' intention."); *Sanders v. DeWitt,* 579 S.W.2d 707, 711 (Mo.Ct.App.1979) ("The object of a signature is to show mutuality or assent which may be shown in other ways as, for example, by acts or conduct of the parties.").

▮ Texas law is also in accord with decisions applying the FAA. Although the FAA requires an arbitration agreement to be written, it does not expressly require the agreement to be signed by the parties. *See* 9 U.S.C.A. § 3 (West 1999); *Valero Ref., Inc. v. M/T Lauberhorn,* 813 F.2d 60, 63–64 (5th Cir.1987). Nevertheless, a party seeking to enforce a purported arbitration agreement must establish that the parties agreed to arbitrate the dispute. *Lang,* 321 F.3d at 537. In the absence of signatures, other evidence has been held sufficient to establish the parties' assent.

For example, in *Valero,* the court stated, "It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature [and][o]rdinary contract principles determine who is bound by a written arbitration agreement." 813 F.2d at 64. The court noted that the party attempting to avoid the arbitration agreement acknowledged in its pleadings that the agreement existed and that it had executed the agreement. That party's counsel stated at a hearing before the trial judge that there were no problems with the agreement's authenticity. Based on these facts, the appellate court held that there was sufficient evidence in the record to uphold the trial court's finding that the parties assented to the arbitration agreement. *Id.*

In another case, the defendants agreed to build a home for the plaintiff. The plaintiff attempted to avoid an arbitration agreement included within the written contract by arguing that the defendants did not properly sign the contract and therefore did not demonstrate the assent necessary to form a binding contract. *Stinson v. America's Home Place, Inc.,* 108 F.Supp.2d 1278, 1280, 1283 (M.D.Ala.2000). A federal district judge noted that "a proper signature is by no means the only way a party can manifest assent to a contract." *Id.* at 1283. The judge found that the defendants demonstrated their assent to the contract by following through on their contractual obligation to build the home. *Id.*

## APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

From the foregoing discussion of the law, it is clear that Bunzl had the burden in the trial court of establishing the existence of an agreement to arbitrate. *Oakwood Mobile Homes,* 987 S.W.2d at 573; *Jebbia,* 26 S.W.3d at 757. Because Bunzl did not sign the Agreement, Bunzl's burden included establishing that the parties intended to be bound regardless of whether the contract was signed by both parties. *See Jebbia,* 26 S.W.3d at 757; *see also Rea,* 155 Tex. at 357–59, 286 S.W.2d at 417–19 (suggesting that signatures may be a condition precedent to the effectiveness of a

contract); *Jennings,* 936 S.W.2d at 18–19 (holding that the party seeking to compel arbitration has the burden of establishing that conditions precedent to arbitration have been satisfied). The question of the parties' intent was a fact question for the trial court to resolve. *See Scaife,* 100 F.3d at 410. We cannot overturn the trial court's resolution of this fact question unless Bunzl establishes that the trial court could reasonably have reached only the opposite decision. *See Walker,* 827 S.W.2d at 840. Moreover, if Bunzl found itself unable to establish, as a matter of law, that the parties intended to be bound regardless of whether the contract was signed, it should have requested an evidentiary hearing. *See Jebbia,* 26 S.W.3d at 758. But Bunzl did not request an evidentiary hearing below and does not complain in this Court of the trial court's failure to conduct such a hearing.

 The defendants provided the trial court with Isam's affidavit, which states that the Agreement is "a true and accurate copy of Mr. Avila's Employment Agreement," that the Agreement was kept in his employment jacket so it could be reviewed if questions arose regarding the parties'

rights and obligations under the Agreement, and that she personally reviewed the Agreement before Avila was terminated to ensure that Bunzl acted in accordance with its obligations under the Agreement. This is some evidence that Bunzl considered itself bound by the Agreement.[4]

 The trial court also had the Agreement itself to review. Although the Agreement has a signature block intended for Bunzl's representative, it was never signed. The trial court also noted that the Agreement states, "No modification or amendment of any provision of this Agreement is effective unless it is in writing *and signed by the parties to this Agreement.*" (Emphasis added). This provision and the blank signature block are evidence that the parties did not intend to be bound until both parties signed the Agreement. *See Scaife,* 100 F.3d at 410–11 (holding that signatures were required where, among other things, contract contained signature block, along with a provision that amendments had to be in signed writings); *Rea,* 155 Tex. at 358–59, 286 S.W.2d at 418–19 (holding that signatures were required where, among other things, contract had signature block).

---

4. Although Bunzl did not make this argument below or in this Court, we note that Bunzl's employment of Avila could be some evidence that it considered itself bound by the Agreement. *See, e.g., Stinson,* 108 F.Supp.2d at 1283 (finding that party manifested assent by performing under the contract); *Halliburton,* 80 S.W.3d at 568–69 (holding that an employee accepted the employer's offer to resolve future disputes through arbitration by continuing to work after being notified that continuing to work for the employer would constitute acceptance of the arbitration agreement). We also note, however, that the Agreement is dated December 6, 1993, and Avila alleges that his employment began in June of that year. The Agreement does not provide that Avila's employment is contingent upon the Agreement, nor does it provide that employment constitutes acceptance of the

Agreement. Thus, Bunzl did not necessarily manifest its assent to the Agreement by employing Avila.

It is not even clear that Bunzl USA, the only relator in this proceeding, did in fact employ Avila. Although the Agreement purports to be between Avila and "Bunzl USA," it contains the words "Bunzl/Papercraft" in the signature block, and Isam's affidavit indicates that Avila was employed by "Bunzl Distribution Southwest, L.P." Another affidavit attached to the defendants' memorandum in support of their motion to reconsider states that Avila was employed by "Papercraft Albuquerque," which "is one of the facilities that makes up Bunzl Distribution Southwest, L.P." Lorenzini's affidavit, attached to his special appearance, states that Bunzl Distribution Southwest, L.P. is "an indirect subsidiary" of Bunzl USA.

From this conflicting evidence, the trial court could have reasonably concluded that Bunzl did not establish the existence of an agreement to arbitrate. Therefore, the court did not abuse its discretion by refusing to compel arbitration.

CONCLUSION

For the reasons stated herein, the petition for writ of mandamus is denied.