In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-126 CV


____________________



IN RE BEYOND THE ARCHES, INC.,


 d/b/a McDONALD'S RESTAURANT







Original Proceeding






MEMORANDUM OPINION


 Callee McCoy alleges she injured her back at work. She incurred medical bills
which were paid for by her employer, Beyond the Arches, Inc., d/b/a McDonald's. 
McCoy sued Arches for negligence, and Arches filed a motion to compel arbitration. The
trial court denied the arbitration request, and Arches filed this petition for writ of
mandamus. (1) 

 A writ of mandamus will issue to correct a clear abuse of discretion when there is
no other adequate remedy at law. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex.
2001). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to clear and prejudicial error of law. Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). When the trial court's decision rests on
the resolution of factual issues or matters committed to the court's discretion, the party
opposing the trial court's decision must establish the court could reasonably have reached
only one decision. Id. at 839-40. Regarding resolution of factual issues, we may not
substitute our judgment for that of the trial court, even if we would have decided the issue
differently. Id. As to legal issues, the trial court has no discretion in determining what
the law is or in applying the law to the facts. Id. at 840. A clear failure by the trial court
to analyze or apply the law correctly constitutes an abuse of discretion. Id.

 A party seeking to compel arbitration must first establish that an arbitration
agreement exists. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 ( Tex. 1999). 
Although there is a strong presumption favoring arbitration, the presumption arises only
if a valid arbitration agreement exists. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223,
227 (Tex. 2003). Arbitration agreements are interpreted under traditional contract
principles, and an employer attempting to enforce an arbitration agreement must show the
agreement meets all requisite contract elements. Id. at 227-28.

 Arches explains that employees, at the time of their employment, are given a copy
of the "Right Plan," a dispute resolution program, and each employee signs a "Release of
Medical Records" form contained in the "Plan." Arches maintains McCoy could not have
signed the form without being presented a copy of the plan booklet. Arches says the form
references the employer's "occupational injury plan." Based on McCoy's having signed
the form, Arches asserts McCoy knew or had reason to know of the arbitration agreement
contained in the "Plan."

 McCoy, on the other hand, declares she did not sign any document relating to
arbitration. She acknowledges she signed a "Release of Medical Records" form, but it
does not contain any reference to arbitration or an employee injury plan. McCoy explains
no one ever mentioned or gave her a plan booklet or an arbitration agreement prior to
injury and suit.

 In an affidavit, McCoy stated she had not seen any documents on the "Plan" until
after she filed suit; she did not know the "Plan" existed prior to her injury; she never
received any medical bills for the work-related injury; and she never agreed to arbitrate. 
During her deposition, McCoy again testified about her knowledge of the "Plan" booklet:

 Q. (Defense counsel): Do you remember exactly when you asked
[supervisor] for a copy of that book?

 A. (McCoy): No, sir, not a specific date. All I know, it was after I got hurt.

 Q. Do you remember if it was before you went to the doctor?

 A. No, it was after my doctor.

 . . . .

 Q. (Plaintiff's counsel): Ms. McCoy, isn't it true that you had already sued
McDonald's when you got that book?

 [Defense Counsel]: Objection, leading.

 A. Yes, sir.

 Q. Do you remember whether . . . it was before or after you sued McDonald's
when you got that book from [supervisor]?

 [Defense Counsel]: Objection, form.

 A. After. 


McCoy indicates she signed the Release of Medical Records form as a separate paper in
a stack of papers, and there was no booklet or plan with it. The release form contains no
reference in the form to any employee injury plan. 

 Arches also submitted another document, titled "Authorization For Initial Treatment
and Prescription Services," as evidence of an agreement to arbitrate. Expressly addressed
to the provider, this page authorizes the provider to give medically necessary treatment,
subject to the "Employer's occupational injury plan," for conditions related to the
employee's injury. McCoy's name and social security number are printed in the blanks
at the top of the page for the employee's name and social security number. Listed as the
"owner operator Employer" on the provider notice is McDonald's of Woodville. The page
is signed by Travis Darcel, designated as employer representative. McCoy's signature is
not on the page; nor is the document addressed to her. 

 At the time of her August 1999 employment, McCoy also filled out and signed an
employment application that states in part as follows: 

 1. I certify that I have read and fully completed both sides of this application
and that the information contained on this application is correct to the best
of my knowledge. . . . 3. I acknowledge that this independently owned and
operated McDonald's franchise reserves the right to amend or modify the
policies in its Handbook and other policies of this McDonald's franchise at
any time, without prior notice. These policies do not create any promises or
contractual obligations between this independent McDonald's franchise and
its employees. At this McDonald's franchise, my employment is at will.
This means I am free to terminate my employment at any time, for any
reason, with or without cause, and this McDonald's franchise retains the
same rights. The independent Owner/Operator of this McDonald's franchise
is the only person who may make an exception to this, and it must be in
writing and signed by the Owner/Operator. I understand that my employer
is an independent Owner/Operator of a McDonald's franchise and that I am
not employed by McDonald's Corporation or any of its subsidiaries. The
independent Owner/Operator of this restaurant is solely responsible for all
terms, condition, and any other issues concerning my employment. . . . 


The employment application is the only document signed by McCoy that mentions a
"Handbook and other policies." The document recites that the Handbook and other
policies do not create any policies or contractual obligations between the franchise and its
employees; further the document contains no reference to any requirement to arbitrate. 

 By affidavit and deposition, McCoy stated she was never shown or told, and was
not aware of, the "Plan" prior to suit, and she never agreed to arbitrate; her signature is
not found on any document referencing the "Right Plan" or an arbitration agreement. The
evidence submitted to the trial court supports that position. "[T]he presence or absence
of signatures on a written contract is relevant to determining whether the contract is
binding on the parties." In re Bunzl USA, Inc. No. 08-03-00306-CV, 2004 WL 42615,
at *4 (Tex. App.--El Paso Jan. 8, 2004, orig. proceeding) (application for mand. filed)(not
yet released for publication). If a party signs a contract, the signature is strong evidence
the party unconditionally assented to its terms. Id. But when the parties have
unconditionally assented to terms stated in an unsigned document, the document constitutes
a binding written contract, regardless of whether it is signed. Id. (citing 1 Arthur
Linton Corbin, Corbin on Contracts § 2.10, at 168 (Joseph M. Perillo rev., 1993));
see also Simmons & Simmons Constr. Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415, 418
(1955). When a person's signature is not on a written contract, other evidence may be
relied on to prove the party's unconditional assent. Bunzl, 2004 WL 42615, at *4-5.
Arches' burden included establishing that the parties intended to be bound regardless of
whether McCoy's signature was present or not. Bunzl, 2004 WL 42615, at *6. And the
question of the parties' intent was a fact question for the trial court. Id.; see generally
ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287,
292 (Tex. App.--Corpus Christi 2003, pet. denied) (signatures are not a required factor
where there is no evidence of intent to require both signatures as a condition precedent to
the agreement's becoming effective as a contract). 

 The elements of a valid contract are (a) an offer, (b) an acceptance in strict
compliance with the offer's terms, (c) a meeting of the minds, (d) each party's consent to
the terms, and (e) execution and delivery of the contract with the intent that it be mutual
and binding. Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999,
pet. denied). Here, Arches did not meet its burden of establishing a "meeting of the
minds," consent to the terms, and acceptance of the terms in strict compliance with the
offer's terms. The trial judge considered the evidence and was free to believe McCoy's
testimony that she did not sign any document relating to or referencing an arbitration
agreement and that she had no intent to be bound by an arbitration clause of which she had
no knowledge. Arches did not produce any evidence that McCoy had knowledge of,
assented to, or signed a document containing or referencing an arbitration agreement. 
Under the mandamus standard, the trial court's denial of Arches' motion to arbitrate was
not arbitrary and unreasonable. Issue one is overruled. 

 In issue two, Arches maintains that by accepting benefits McCoy ratified the
existence of both the employee benefit plan and the arbitration agreement. Arches paid
McCoy's medical bills on her back injury. Ratification may be inferred by a party's
course of conduct in retaining a transaction's benefit after acquiring full knowledge of the
circumstances. See generally Miller v. Kennedy & Minshew, Prof'l Corp., No. 2-01-408-
CV, 2003 WL 22725125, at *11 (Tex. App.--Fort Worth Nov. 20, 2003, no pet.)(not yet
released for publication); Missouri Pac. R.R. Co. v. Lely Dev. Corp., 86 S.W.3d 787, 792
(Tex. App.--Austin 2002, pet. dism'd). Before the acceptance of benefits can be said to
trigger estoppel or demonstrate ratification, it must be shown that the benefits were
accepted with knowledge of all material facts. Frazier v. Wynn, 472 S.W.2d 750, 753
(Tex. 1971); Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 737 (Tex. App.--Corpus Christi 1994, writ denied). The question is -- did McCoy's acceptance of the
payment of her medical bills amount to conduct showing she recognized the arbitration
agreement as existing and binding after she learned of its existence? McCoy testified she
did not learn of the booklet and the agreement until after her injury and the filing of suit. 
She explained she only acquired the booklet after she learned of another employee who had
been injured and had a booklet. McCoy said she asked her supervisor for a copy of the
booklet. She also said she was never sent a medical bill; the doctors directly billed her
employer. By affidavit, McCoy stated the following: 

 I did not accept any benefits under any "Plan." I did not know any "Plan"
existed prior to my injury nor agree to any terms of any "Plan" as alleged
by John Schwartz and [Arches]. I did not receive any medical bills. As far
as I knew, my employer was paying my medical bills for the injury I
received at work. I never met with John Schwartz at the time I as hired. No
policy involving employee benefits or health care coverage called the "Right
Plan[."] I never received a copy or was told of the plan until after I was
injured. I never agreed to arbitration of any disputes with my employer. 

 

 By affidavit, John Schwartz, owner of the franchise, stated the "store policy for the
McDonald's restaurant involving employee benefits and health care coverage was under
the program entitled "The Right Plan[,]" and "copies of the Plan booklets were distributed
to all employees, including Callee McCoy at orientation." Schwartz's statement concerns
"store policy" regarding distribution of booklets to employees, but his statement does not
establish he knew McCoy received a booklet or that she knew or understood the
employer's payments of her medical bills for a work-related injury meant she agreed to
arbitrate her negligence claim against her employer. 

 The record also contains two affidavits from Clayton Hood, the restaurant's
manager at the time of McCoy's injury in October 1999. One affidavit says the store
policy, upon the hiring of an employee, was to have each employee sign and date a written
form acknowledging her receipt and reading of the benefit plan known as "Safe Workers
Ahead Occupational Energy Plan" and the arbitration agreement in the "Right Plan." 
Hood stated in the first affidavit as follows:

 It was also the policy of [Arches] that this written acknowledgment form
bearing the date and signature of the employee be placed in the employee's
personnel file if the arbitration and benefit plan were received and agreed to
by the employee. If no plan documents were received, read and agreed to
by an employee, no acknowledgment form with the employee's signature
would be found in that employee's personnel file. 


The record contains no written acknowledgment form signed by McCoy. A few weeks
later Hood executed another affidavit stating that subsequently he had been shown
McCoy's employee file and, upon review of those documents, concluded the "file indicates
[she] received the "Right Plan" on the date she signed the "Release of Medical Records"
form "taken from the Right Plan." Hood's conclusion is that the presence of the signed
medical records release form "indicates [McCoy] received the [Right] Plan according to
[Arches'] policies." The trial court may have rejected the second affidavit. The
statements in the affidavit are conclusory and the trial court may have viewed them as
inconsistent with his earlier affidavit. The trial court's decision rested on a resolution of
fact issues. Arches has not shown that McCoy knew of the arbitration agreement or that
her conduct in allowing her employer to pay her work-related medical bills demonstrates
a knowledge of any arbitration agreement. Issue two is overruled.

 We need not address issues three and four since they assume the existence of a valid
arbitration agreement. And we need not address Arches' complaint about the trial judge's
striking of Arches' supporting affidavits. Even if the affidavits had not been struck, their
contents do not establish that an arbitration agreement existed or that McCoy ratified the
arbitration by accepting the employer's payment of her work-related accident benefits
under the "Plan." All issues are overruled. The petition for writ of mandamus is denied. 

 PETITION FOR WRIT OF MANDAMUS DENIED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on May 24, 2004

Opinion Delivered July 29, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. McCoy contends the Texas Arbitration Act, rather than the Federal Arbitration
Act, applies in this case. But the arbitration agreement, whether it is valid or not, provides
for arbitration under the FAA and states the employer is engaged in interstate commerce.