COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS









IN RE: DECEMBER NINE COMPANY,
LTD.,

§
 
§
 
§
 
§
 
§
 
 § 



No. 08-06-00225-CV

AN ORIGINAL PROCEEDING 

IN MANDAMUS





OPINION ON PETITION FOR WRIT OF MANDAMUS

            In this original proceeding, Relator December Nine Company, Ltd. (“December Nine”)
seeks a writ of mandamus from the trial court’s order denying its motion to compel arbitration. 
We conditionally grant mandamus relief.
            December Nine, doing business as PeopleCare, operates several group residential homes
licensed by the State of Texas as inpatient mental health facilities. Christopher Estrada and Irma
Daher were employees of December Nine and worked in its “House 8” facility located in
El Paso. Mr. Estrada was employed as a direct support assistant, caring for one patient, while
Ms. Daher was employed as a personal support assistant, caring for five patients. In August
2005, Mr. Estrada and Ms. Daher were disciplined, suspended, and discharged from the facility. 
Subsequently, they filed a wrongful discharge suit against December Nine, alleging their
termination was in retaliation for reporting illegal activities to their supervisors, an administrator,
and the Texas Department of Disabled Services, in violation of Tex.Health & Safety Code
Ann. § 161.134. Specifically, Mr. Estrada and Ms. Daher alleged they were retaliated against for
reporting that patients were not being fed sufficiently and that they had observed a coworker who
was partially clothed with a naked patient; and allegedly, in response, they were suspended and
ultimately discharged.
            December Nine filed an original answer and asserted as an affirmative defense that there
existed a valid and enforceable arbitration agreement between the parties. December Nine filed a
motion to compel arbitration and an amended motion, including as evidence the company’s
Alternative Dispute Resolution (“ADR”) Program and the written acknowledgments of receipt
executed by Mr. Estrada and Ms. Daher, along with an affidavit from James Bean, as the
attesting custodian of records for December Nine. In supplemental replies, December Nine also
introduced the American Arbitration Association (“AAA”) National Rules for Resolution of
Employment Disputes and a supplemental affidavit from Mr. Bean. In their response,
Mr. Estrada and Ms. Daher challenged the enforceability of the alleged arbitration agreement and
attached affidavits to their response, attesting that they did not recall signing the acknowledgment
forms and did not understand the ADR Program document upon recent review. After a hearing
on the motion, the trial court denied December Nine’s motion to compel arbitration.
MOTION TO COMPEL ARBITRATION
Federal Arbitration Act
            We first consider Mr. Estrada’s and Ms. Daher’s claim that December Nine failed to
establish that the Federal Arbitration Act (“FAA”) applies. In its motion to compel arbitration,
December Nine asserted that the arbitration agreement was governed by the FAA. The FAA
applies to all suits in state or federal court when the dispute concerns a “contract evidencing a
transaction involving commerce.” Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 269-70
(Tex. 1992)(orig. proceeding). “Commerce” has been broadly defined and encompasses
contracts relating to interstate commerce. In re Gardner Zemke Co., 978 S.W.2d 624, 626
(Tex.App.--El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on
interstate commerce; it only requires that commerce be involved or affected. In re L & L
Kempwood Assocs., L.P., 9 S.W.3d 125, 127 (Tex. 1999)(orig. proceeding).
            Here, the arbitration agreement provides that arbitration will be administered by the AAA
and conducted pursuant to the AAA Employment Due Process Protocol and under the National
Rules for the Resolution of Employment Disputes. Further, the agreement states that any “award
may be vacated or modified only on the grounds specified in the U.S. Arbitration Act or other
applicable law.” December Nine also introduced a supplemental affidavit from Mr. Bean,
President of 212GP, Inc., the general partner of December Nine, in which he attested that House
8, also known as “New Hope Community Living VIII,” is an Intermediate Care Facilities for
Mental Retardation (“ICF/MR”) and that all patients who receive services from ICF/MR facilities
must be eligible for either federal Supplemental Security Income or be determined to be
financially eligible for Medicaid. Further, Mr. Bean stated that House 8 accepts Medicaid
reimbursements for the care its employees give to its patients and December Nine receives goods
and services from outside the State of Texas, such as office supplies, furniture, and equipment to
run its facilities.
            Relying on In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig.
proceeding), December Nine assert that the employer/employee relationship between the parties
involved interstate commerce because the facility where Mr. Estrada and Ms. Daher performed
their duties received federal financial assistance through Medicaid. See In re Nexion Health, 173
S.W.3d at 69 (holding that Medicare payments made to relator on behalf of patient was sufficient
to establish interstate commerce and the FAA’s application). Mr. Estrada and Ms. Daher,
however, assert that In re Nexion Health is distinguishable because unlike Medicare, Medicaid is
a state medical assistance program that is funded by the federal government through the Social
Security Act, but administered by the State of Texas. Although the State is technically the
“payer” of Medicaid benefits, we do not agree that the Court’s holding in In re Nexion Health is
limited by this distinction. As previously discussed, the term “commerce” is broadly construed. 
See In re L & L Kempwood Assocs. L.P., 9 S.W.3d at 127. An employment relationship
involving commerce, which encompasses contracts relating to interstate commerce, is a sufficient
transaction to fall within the FAA. In re Anaheim Angels Baseball Club, Inc., 993 S.W.2d 875,
877-78 (Tex.App.--El Paso 1999, orig. proceeding); see also In re Big 8 Food Stores, Ltd., 166
S.W.3d 869, 880 (Tex.App.--El Paso 2005, orig. proceeding)(relationship between an employer
who is regularly engaged in activities related to interstate commerce and its employees is affected
by interstate commerce as a matter of law and implicates commerce clause issues). Regardless of
the State’s action as a conduit for the federal funds, it remains uncontroverted that December
Nine received federal funds for providing care to patients in its House 8 facility. Mr. Estrada and
Ms. Daher provided direct care services to December Nine’s patients, for which the company
received Medicaid reimbursements. Moreover, the purported arbitration agreement specifically
states that it is governed by federal arbitration law. Thus, we conclude the employment
relationship which existed between December Nine and Mr. Estrada and Ms. Daher, as its
employees, was related to interstate commerce and the FAA applies.
Standard of Review 
            A writ of mandamus will issue if the trial court has clearly abused its discretion and there
is no other adequate remedy of law. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)(orig.
proceeding). With respect to resolution of factual issues or matters within the trial court’s
discretion, we may not substitute our judgment for that of the trial court. Id. at 839-40. The
relator must show that the trial court could reasonably have reached only one decision. Id. at
840. We will not disturb the trial court’s decision unless it is shown to be arbitrary and
unreasonable. Id. With respect to the resolution of legal issues, our review is much less
deferential. Id. A trial court has no discretion in determining what the law is or in applying the
law to the facts. Id. at 840. Thus, a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion. Id. When a trial court erroneously denied a
motion to arbitrate under the FAA, mandamus is the appropriate remedy. In re Halliburton Co.,
80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding).
Existence and Scope of Arbitration Agreement
            A party seeking to compel arbitration must establish the existence of an arbitration
agreement and show that the claims raised fall within the scope of that agreement. In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999)(orig. proceeding), abrogated on
other grounds by In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002)(orig. proceeding). The
law presumes the existence of an arbitration agreement and any doubts regarding the existence or
scope of an agreement are resolved in favor of arbitration. In re FirstMerit Bank, N.A., 52
S.W.3d 749, 753 (Tex. 2001)(orig. proceeding). Whether there is an enforceable agreement to
arbitrate is a question of law that we review de novo. J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003). If there is a valid agreement, then the burden shifts to the party
opposing arbitration to raise an affirmative defense. Id.; In re Oakwood Mobile Homes, Inc., 987
S.W.2d at 573.
            Applying state contract principles, we must first determine whether a valid agreement to
arbitrate exists. In re Bunzl USA, Inc., 155 S.W.3d 202, 209 (Tex.App.--El Paso 2004, orig.
proceeding); see also Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983)(primary concern in
construing a written contract is to ascertain the true intent of the parties as expressed in the
instrument).
            December Nine asserts the evidence established that both Mr. Estrada and Ms. Daher
entered into an enforceable arbitration agreement with December Nine. The company introduced
into evidence the written acknowledgments of Mr. Estrada and Ms. Daher, which both state:
I hereby acknowledge that I have had an opportunity to review PeopleCare’s
Alternative Dispute Resolution Program and understand that my continued
employment with PeopleCare beyond August 15, 2004 constitutes my agreement
to be bound by this process.

Mr. Estrada executed the form on March 17, 2005 and Ms. Daher executed the form on
August 10, 2004.
            The PeopleCare ADR Program states, in relevant part:
Under the Procedure, you must first attempt to resolve any dispute arising
from your employment or the termination of that employment internally through
the Company management channels, and then with non-binding mediation. After
that, certain disputes may be submitted for resolution by binding arbitration. This
alternative dispute resolution process will be the exclusive process for
resolving employment disputes covered by this Procedure. Hence, you and the
Company are precluded from bringing or raising in court or another forum any
dispute that was or could/have been brought or raised under the means set forth in
this Procedure. [Emphasis in original].

. . .
 
[Following the open door policy and formal grievance procedure]. All employee
concerns involving legal rights can be addressed through the mediation procedure. 
A claim involving a legal right is one protected by law that can be asserted in
court or before an administrative agency. These claims can relate to contracts or
covenants, torts, discrimination (whether based on sex, pregnancy, race, color,
national or ethnic origin, age, religion, sexual orientation, mental or physical
disability or other characteristics protected by statute), wrongful discharge,
violations of confidentiality or breaches of trade secrets, on-the-job injuries and
accidents, wages or other compensation, and/or violation of any federal, state, or
other governmental law, statute, regulation, or ordinance, and whether based on
statute or common law.

. . .
 
If a dispute involving legal rights remains unresolved at the conclusion of the
mediation process, either you or the Company may submit the dispute for
resolution by final binding arbitration under the Procedure. The arbitration will be
conducted pursuant to the American Arbitration Association (‘AAA’)
Employment Due Process Protocol and under the National Rules for the
Resolution of Employment Disputes of the AAA, as amended (‘Rules’). These
Rules are incorporated by reference into this Procedure.

            In response to December Nine’s motion to compel arbitration, Mr. Estrada and Ms. Daher
introduced into evidence their respective affidavits in which they each attested that they did not
recall signing the acknowledgment form, did not recall reading the ADR Program prior to filing
the lawsuit, and upon recently reading that document, did not understand it. A party’s signature
on a written contract is “strong evidence” that the party unconditionally assented to its terms. In
re Bunzl USA, Inc., 155 S.W.3d at 209, citing 1 Arthur Linton Corbin, Corbin on
Contracts § 2.10, at 168 (Joseph M. Perillo rev., 1993). Mr. Estrada and Ms. Daher did not
deny that they signed the acknowledgment form, but rather, only attested to not remembering
signing these forms. We must agree with December Nine that their statements do not raise a fact
issue as to the authenticity of the written instruments. See Wheeler v. Security State Bank, N.A.,
159 S.W.3d 754, 756-57 (Tex.App.--Texarkana 2005, no pet.)(party denying the execution of a
document must file a verified denial, and in absence of a verified pleading, the document is
received into evidence as fully proved); see also Gutierrez v. Rodriguez, 30 S.W.3d 558, 562
(Tex.App.--Texarkana 2000, no pet.)(party need not prove the authenticity of the signors’
signatures on the deeds where opposing party does not object and does not file a verified
pleading of its contentions). Further, Mr. Estrada’s and Ms. Daher’s bare claim to not understand
the ADR Program does not defeat the enforceability of the arbitration agreement. See Nguyen
Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d 144, 146 (Tex.App.--Houston [1st Dist.] 1986,
no writ)(Contract signor “must be held to have known what words were used in the contract and
to have known their meaning, and he must also be held to have known and fully comprehended
the legal effect of the contract.”); see also In re McKinney, 167 S.W.3d 833, 835 (Tex.
2005)(orig. proceeding)(“Absent fraud, misrepresentation, or deceit, a party is bound by the
terms of the contract he signed, regardless of whether he read it or thought it had different
terms.”).
            Here, the signed acknowledgment forms notified Mr. Estrada and Ms. Daher of the
company’s ADR Program and each form states above the respective signatures that the party had
an opportunity to review that Program. The ADR Program explicitly states the company’s
arbitration policy. Both Mr. Estrada and Ms. Daher continued their employment with the
company after notification. An at-will employee who receives notice of an employer’s
arbitration policy and continues working with knowledge of the policy accepts the terms as a
matter of law. In re Dallas Peterbilt, Ltd., L.L.P., 196 S.W.3d 161, 163 (Tex. 2006)(orig.
proceeding). We conclude December Nine established the existence of an arbitration agreement
between itself and Mr. Estrada and Ms. Daher.
            Next, we consider whether the claim raised by Mr. Estrada and Ms. Daher falls within the
scope of the arbitration agreement. Under the FAA, any doubts as to whether a claim falls within
the scope of the agreement must be resolved in favor of arbitration. Prudential Secs. Inc. v.
Marshall, 909 S.W.2d 896, 899 (Tex. 1995)(orig. proceeding). “[A] court should not deny
arbitration ‘unless it can be said with positive assurance that an arbitration clause is not
susceptible of an interpretation which would cover the dispute at issue.’” Id., quoting Neal v.
Hardee’s Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990).
            Mr. Estrada and Ms. Daher sued December Nine for wrongful discharge in violation of
Tex.Health & Safety Code Ann. § 161.134. Mr. Estrada and Ms. Daher argue that their
claim does not fall within the scope of the arbitration agreement because that alleged agreement
is vague, ambiguous, and indefinite as to what is covered and what is not covered. They note
that the agreement states, “[t]his alternative dispute resolution process will be the exclusive
process for resolving employment disputes covered by this Procedure,” but then fails to specify
what is covered.
            In relevant part, the agreement also states: 
Not all employee concerns are appropriate for this Procedure. For
example, the Procedure will not cover the following claims:
 
i.A claim for unemployment compensation benefits;
 
ii.A claim by the Company for an injunction or other equitable relief,
including claims of unfair competition and the use or unauthorized
disclosure of trade secrets or confidential information, for which
the Company may pursue relief from a court; and 
 
iii.A claim based upon the Company’s employee benefits and/or
welfare plans that contain an appeal procedure or other procedure
for the resolution of disputes under the plan.
 
However, the Procedure will cover any dispute about whether the
employee concern is properly subject to the Procedure. It will also cover all those
claims whether made against the Company, any of its affiliates, or its individual
officers, directors, managers or shareholders (in an official or personal capacity).

Mr. Estrada and Ms. Daher argue that the agreement identifies and excludes some employee
concerns, without identifying examples of concerns that are appropriate for arbitration, and
further, by using the phrase, “[f]or example,” the agreement fails to identify all legal right claims
that are not covered by the agreement. However, the agreement explicitly and unambiguously
states that “all employee concerns involving a legal right may be submitted to binding
arbitration.” The agreement identifies wrongful discharge and/or any violation of state law
whether based on statute or common law, as claims involving a legal right that can be asserted in
court or before an administrative agency. Thus, Mr. Estrada’s and Ms. Daher’s alleged claim
falls squarely within the scope of the arbitration agreement.
            Mr. Estrada and Ms. Daher also assert that December Nine “left itself some wiggle room
to back out of the agreement,” by “withholding information about what other legal right claims it
was not agreeing to arbitration.” If an employer retains the unilateral right to modify an
arbitration plan, the consideration for the arbitration agreement is illusory. Webster, 128 S.W.3d
at 230 n.2. In reviewing the agreement, there is no provision that would enable December Nine
to change the arbitration agreement unilaterally. To the contrary, the agreement states the ADR
Program covers any dispute as to whether the employee concern is properly subject to the
Procedure. We find no merit to the claim that December Nine made an “indefinite offer.” We
conclude there exists an arbitration agreement between the parties and the allegations against
December Nine fall within the scope of that agreement.
Defenses to Arbitration
            As an affirmative defense, Mr. Estrada and Ms. Daher claim the arbitration agreement is
unconscionable for a number of reasons. Unconscionability involves two aspects: (1) procedural
unconscionability, which refers to the circumstances surrounding the adoption of the arbitration
provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration
provision itself. In re Halliburton Co., 80 S.W.3d at 571. The burden of proving
unconscionability rests on the party seeking to invalidate the arbitration agreement. In re
Halliburton Co., 80 S.W.3d at 571; In re FirstMerit Bank, N.A., 52 S.W.3d at 756.
            Mr. Estrada and Ms. Daher assert that under the agreement, December Nine unfairly
retains too much control over its enforcement because the company failed to provide them with a
copy of the ADR Program or the AAA rules and requires employees to ask the company for the
AAA rules.


 Further, they point out that the agreement does not state they can review the ADR
Program document at a later date and does not provide employees with the AAA address so that
they can obtain the rules themselves. By their written acknowledgments, Mr. Estrada and
Ms. Daher had an opportunity to review the ADR Program and no evidence suggests that they
were forestalled from obtaining a copy of the Program. Moreover, the agreement expressly
incorporates the AAA’s National Rules for the Resolution of Employment Disputes by reference. 
It also states, “[a] copy of the complete AAA Employment Mediation Rules may be obtained
from the Company President or the Human Resources Department.” We fail to see how having
to request a copy of the incorporated Rules is so onerous a requirement as to amount to
procedural or substantive unconscionability. Mr. Estrada and Ms. Daher also assert the
agreement is unconscionable because their attorney in the litigation of this case is representing
them on a contingency fee basis, but will not represent them if the case is arbitrated. We find this
circumstance, if true, unfortunate but unrelated to the issue of whether the arbitration agreement
itself is unconscionable.
            Next, Mr. Estrada and Ms. Daher argue the arbitration agreement is unconscionable
because there is a likelihood that they will incur prohibitively expensive arbitration costs that will
prevent them from pursuing their claims. Both the United States and Texas Supreme Courts
have recognized that the existence of large arbitration costs could preclude litigants from
effectively vindicating their statutory rights in an arbitral forum. Green Tree Fin. Corp. v.
Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); In re FirstMerit Bank,
N.A., 52 S.W.3d at 756. While neither Court specified how detailed the showing of prohibitive
expense must be, some specific information of future costs is required. Green Tree Fin. Corp.,
531 U.S. at 92, 121 S.Ct. at 522-23; In re FirstMerit Bank, N.A., 52 S.W.3d at 756. 
            With regard to fees, the arbitration agreement provides, in relevant part:
Fees. Any notice mailed to the Company for external mediation or arbitration
shall be accompanied by a $125 filing fee, which shall be applied to the
administrative fee assessed by AAA for access to its service. The Company
agrees to pay all AAA administrative fees (except for the $125 paid by the
employee) and the mediator’s or arbitrator’s fees and expenses. Provided,
however, the employee may elect at any time to share the AAA administrative
fees and the external mediator’s or arbitrator’s fees and expenses equally with the
Company, and provided further, that it is an exception to the Company’s policy
that it will pay for the arbitrator’s fees if a case is determined by the arbitrator to
have been filed frivolously, or a case is filed with intent to harass. All other costs
and expenses associated with any mediation or arbitration, including, without
limitation, the party’s attorneys’ fees, will be borne by the party incurring the
expense.

            Mr. Estrada and Ms. Daher assert they made a reasonable factual showing of the
likelihood of incurring prohibitive arbitration costs because the arbitration agreement identifies
AAA as the arbitration association that will conduct the arbitration and both the agreement and
the AAA rules state the fees that will be charged. However, under the burden set forth in Green
Tree, the party opposing arbitration must also make some showing of the prohibitive or excessive
character of these future arbitration costs. See Green Tree Fin. Corp., 531 U.S. at 91-2, 121
S.Ct. at 522-23; In re FirstMerit Bank, N.A., 52 S.W.3d at 756. In this case, the only actual
arbitration cost identified was the $125 administrative filing fee that must accompany the
arbitration demand. At the hearing, counsel for Mr. Estrada and Ms. Daher argued that they are
indigent and filed affidavits of inability to pay court costs to have their claims heard by the trial
court. Their counsel argued that since they did not have the $175 to file the lawsuit, they
certainly did not have $125 to file for arbitration. However, as December Nine points out,
pursuant to the arbitration agreement, the company as the party demanding arbitration in this
instance, would be responsible for the $125 filing fee, not Mr. Estrada and Ms. Daher. Beyond
the $125 filing fee, Mr. Estrada and Ms. Daher presented no other specific information that they
will be charged excessive arbitration fees. We conclude Mr. Estrada and Ms. Daher failed to
prove that large or otherwise excessive arbitration costs render the arbitration agreement
substantively unconscionable. Moreover, contrary to their contentions, we cannot conclude that
the arbitration agreement is unconscionable as a whole.
            In sum, we conclude that there exists a valid enforceable arbitration agreement between
the parties and the claim asserted by Mr. Estrada and Ms. Daher in their lawsuit against
December Nine falls within the scope of that agreement. Further, Mr. Estrada and Ms. Daher
failed to prove their affirmative defense to avoid enforcement of the arbitration agreement. 
Therefore, the trial court clearly abused its discretion by denying December Nine’s motion to
compel arbitration. We sustain December Nine’s sole issue. A party erroneously denied the
right to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is
appropriate. See Tipps, 842 S.W.2d at 272-73.
            Accordingly, we conditionally grant the writ of mandamus and direct the trial court to
grant the motion to compel arbitration. See Tex.R.App.P. 52.8(c). The writ will issue only if the
trial court fails to do so.

December 7, 2006
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)