COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )

                                                                              )             
No.  08-04-00259-CV

                                                                              )

IN
RE:  DILLARD DEPARTMENT STORES,     )     AN
ORIGINAL PROCEEDING

INC. and GRIZELDA REEDER                            )

                                                                              )                 IN MANDAMUS

                                                                              )

                                                                              )

                                                                              )

 

 

O
P I N I O N

 

In this original
proceeding, Relators Dillard Department Stores, Inc. and Grizelda Reeder
(collectively ADillard=s@)
seek mandamus relief from an order denying their motion to compel arbitration
of a defamation claim by former employee Andrea Martinez.  Because Ms. Martinez=s
defamation claim did not fall within the scope of the arbitration agreement,
the trial court did not abuse its discretion in refusing to compel
arbitration.  We therefore deny the
requested writ of mandamus.

FACTUAL
AND PROCEDURAL BACKGROUND








Andrea Martinez
began her employment with Dillard=s
in 1983.  In November 2002,
Ms. Martinez was terminated from her employment with the company.  In November 2003, Ms. Martinez filed
suit against Dillard=s.  In her original petition, she alleged that
Grizelda Reeder, Dillard=s
district manager, told the Cielo Vista store manager that she had evidence that
Ms. Martinez had been stealing merchandise through fraudulent use of gift
cards.  Ms. Martinez stated that she and
the store manager were terminated based upon two other allegedly false
accusations:  (1) that she had violated
Section 61.06 of the Texas Labor Code by paying her daughter for her services
with gift cards; and (2) that she had violated a corporate policy or
instruction by allowing a gift card to be credited to an employee=s account.  She also claimed that immediately after her
termination, a rumor began among current and former employees of Dillard=s that she had actually been terminated
for theft, notwithstanding her innocence of that original charge.  Ms. Martinez asserted a cause of action for
defamation against Dillard=s,
Ms. Reeder, and two unnamed defendants.

Dillard=s generally denied Ms. Martinez=s claims and filed a motion to compel
arbitration, stating that Ms. Martinez had signed a form, AAGREEMENT TO ARBITRATE CERTAIN CLAIMS,@ on August 25, 2000 and that her defamation
claim was expressly covered in the Rules of Arbitration.  Attached to the motion were Ms. Martinez=s signed acknowledgment of receipt of
the Agreement to Arbitrate and the Rules of Arbitration and a copy of the Rules
of Arbitration, effective A9/17/02,@ purportedly governing in this
case.  In her response, Ms. Martinez
denied that she agreed to arbitrate her claims as alleged in the Motion and
denied that defamation claims were specifically included in any arbitration
agreement she voluntarily or knowingly signed. 
She also denied that the agreement to arbitrate was supported by valid
consideration and affirmatively asserted that Dillard=s
promise to arbitrate any disputes with her was illusory because it had the
power to modify and amend the agreement without notice to her.








On April 28, 2004,
the trial court conducted a hearing on Dillard=s
motion to compel.  At the hearing, Ms.
Martinez=s counsel
stipulated that she had entered into an agreement to arbitrate in 2000, but it
was not the one initially submitted to the court, that is, the Anew@
Rules of Arbitration dated September 17, 2002.[1]  On the day of the hearing, Dillard=s filed a supplemental pleading in
which it asserted for the first time that it was entitled to arbitration under
the agreement in effect in 2000. 
However, at the hearing, Dillard=s
introduced into evidence an affidavit from Nanette Savage, the administrative
assistance to Dillard=s
general counsel and records custodian, in which Ms. Savage attested that
Exhibit AB,@ the 2002 Rules of Arbitration, were
the arbitration rules that outlined Athe
arbitration process applicable to all employees of Dillards, Inc. and its
affiliates, subsidiaries and limited liability partnerships in effect on the
date of Ms. Martinez=
termination.@  Ms. Martinez=s
counsel argued that Dillard=s
had judicially admitted, by its prior pleadings in which it had relied on the
2002 Rules, that it has a right to modify its arbitration agreement with Ms.
Martinez, therefore the arbitration promise itself was illusory.  Specifically, Ms. Martinez=s counsel argued that the 2002 Rules of
Arbitration, with its many obvious changes, showed that Dillard=s retained the power to change the
arbitration agreement unilaterally, arbitrarily without notice or agreement,
which makes consideration for the original agreement to arbitrate
illusory.  In response, Dillard=s argued that it was entitled to
arbitration because Ms. Martinez admitted that she agreed to arbitration under
the 2000 Rules of Arbitration, nothing in the document stated Dillard=s could unilaterally amend the rules,
and the factual allegations in her defamation suit fell within the scope of the
2000 Rules of Arbitration.








At the hearing,
Dillard=s called
Cielo Vista Store Manager Paul Clauser to testify about the company=s Rules of Arbitration.  Mr. Clauser testified that in 2000, Dillard=s implemented an arbitration policy for
its associates.  Mr. Clauser agreed that
the 2002 Rules of Arbitration were not the arbitration rules Ms. Martinez
agreed to; rather she had agreed to the 2000 Rules of Arbitration.  Dillard=s
argued that Mr. Clauser=s
testimony showed that the 2002 Rules applied to employees who signed the
agreement to arbitrate after those rules were amended, not to
Ms. Martinez.

After the hearing,
the trial court denied Dillard=s
Motion to Compel Arbitration and Supplemental Motion to Compel
Arbitration.  Dillard=s now brings this original proceeding
in mandamus.

DISCUSSION

Standard
of Review

A writ of mandamus
will issue if the trial court has clearly abused its discretion and there is no
other adequate remedy of law.  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)(orig. proceeding).  With respect to resolution of factual issues
or matters within the trial court=s
discretion, we may not substitute our judgment for that of the trial
court.  Id. at 839-40.  The relator must show that the trial court
could reasonable have reached only one decision.  Id. at 840.  We cannot disturb the trial court=s decision unless it is shown to be
arbitrary and unreasonable.  Id.  With respect to the trial court=s decision of legal issues, our review
is much less deferential.  Walker,
827 S.W.2d at 840.  A trial court has no
discretion in determining what the law is or applying the law to the facts.  Id. 
Thus, a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion.  Id.








Mandamus will not
issue where there is a clear and adequate remedy at law, such as a normal
appeal.  Walker, 827 S.W.2d at
840.  When the trial court erroneously
denies a motion to arbitrate under the Federal Arbitration Act, mandamus is the
appropriate remedy.  In re Bruce
Terminix Co., 988 S.W.2d 702, 703-04 (Tex. 1998)(orig. proceeding)(There is
no adequate remedy by appeal for denial of the right to arbitrate, because the
very purpose of arbitration is to avoid the time and expense of a trial and
appeal); Jack B. Anglin Co, Inc. v. Tipps, 842 S.W.2d 266, 272-73 (Tex.
1992)(orig. proceeding).  Here, Dillard=s introduced evidence that Dillard=s is a full line retail department
store headquartered in Little Rock, Arkansas. 
The company maintains operations throughout Texas and in twenty-eight
other states.  In the course of its
business operations, it conducts business activities across state lines and is
involved in numerous transactions involving interstate commerce.  An employment relationship involving
commerce, which encompasses contracts relating to interstate commerce, is a
sufficient transaction to fall within the Federal Arbitration Act.  In re Anaheim Angels Baseball Club, Inc.,
993 S.W.2d 875, 877‑78 (Tex.App.‑-El Paso 1999, orig.
proceeding).  It is undisputed that the
FAA applies to agreement to arbitrate at issue.

Agreement
to Arbitrate








A party seeking to
compel arbitration must establish the existence of an arbitration agreement and
show that the claims raised fall within the scope of that agreement.  See Cantella & Co. v. Goodwin, 924
S.W.2d 943, 944 (Tex.1996)(orig. proceeding). 
There is a strong presumption in favor of arbitration once the party
seeking to compel arbitration proves that a valid arbitration agreement exists.  See J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 227 (Tex. 2003); Prudential Secs., Inc. v. Marshall, 909
S.W.2d 896, 898-99 (Tex. 1995)(orig. proceeding).  The trial court=s
determination of the arbitration agreement=s
validity is a legal question subject to de novo review.  Webster, 128 S.W.3d at 227.

Dillard=s argues that the parties= agreement to arbitrate was valid and
supported by consideration.  The 2000
Rules of Arbitration state that:  AThe Company and the Associate agree
that the procedures provided in these Rules will be the sole method used to
resolve any covered dispute arising between them.@  The Rules also state that A[i]n all cases, the decision of the
arbitrator is final and binding . . . .@  Although Dillard=s
attached the 2002 Rules of Arbitration as the governing arbitration agreement
between the parties in its initial pleading, it later filed additional
pleadings seeking to compel arbitration under the 2000 Rules of Arbitration.  At the hearing, Dillard=s counsel agreed that the 2002 Rules
did not apply to Ms. Martinez.

Ms. Martinez does
not dispute that she agreed to be subject to the Rules of Arbitration that were
in effect in August 25, 2000.  Rather,
she argues that the consideration element for the 2000 arbitration agreement
was illusory, which renders that agreement unenforceable.  Ms. Martinez acknowledges in her brief
that there is no language in the 2000 Rules of Arbitration that expressly
states that Dillard=s
retained a right to modify or rescind the arbitration agreement.  Instead, she contends that ADillard=s
has indisputably behaved as if it had that power by creating new rules, much
more favorable to itself than the old, and requesting that the Court compel
arbitration pursuant to the new rules as modified.@  Ms. Martinez argues that despite the absence
of an express reservation right in the Rules, Dillard=s
in fact retained the power of modification or rescission without any notice to
affected employees.  In so arguing, Ms.
Martinez also asserts that Dillard=s
judicially admitted that it retained the right to modify the rules by attaching
the 2002 Rules of Arbitration to its motion to compel and arguing in its
initial pleadings that it was entitled to proceed under those rules.













If an employer
retains the unilateral right to modify an arbitration plan, the consideration
for the arbitration agreement is illusory. 
Webster, 128 S.W.2d at 230 n.2; but see in re Halliburton Co.,
80 S.W.3d 566, 569-70 (Tex. 2002)(arbitration agreement containing employer=s right to modify or terminate the
arbitration program was supported by sufficient consideration where express
contract provisions provided for employee notification of changes and
prospective application of any amendments). 
We apply standard contract principles to determine whether a valid
arbitration agreement exists.  In re
Bunzl USA, Inc., -- S.W.3d --, 2004 WL 42615, at *4 (Tex.App.--El Paso Jan.
8, 2004, orig. proceeding), citing Am. Heritage Life Ins. Co. v. Lang,
321 F.3d 533, 537 (5th Cir. 2003); see also Coker v. Coker, 650 S.W.2d
391, 393-94 (Tex. 1983)(primary concern of a court in construing a written
contract is to ascertain the true intent of the parties as expressed in the
instrument).  Here, there is neither an
express nor implicit provision in the arbitration agreement indicating that
Dillard=s
retained any unilateral right to modify the parties=
agreement.  It is clear that Dillard=s did, in fact, modify its arbitration
agreement since the parties presented two different versions of the Rules of
Arbitration.  Mr. Clauser=s testimony indicates that Dillard=s provided no notice of the modified
plan to its existing employees, including Ms. Martinez.  Mr. Clauser also offered somewhat vague
testimony as to whether the modified plan would apply to Dillard=s existing employees.[2]  However, Dillard=s
represented to the trial court that it sought to compel arbitration under the
Rules of Arbitration that Ms. Martinez had agreed to in August 2000, not the
2002 Rules of Arbitration it originally had pled was the governing agreement.[3]

At the hearing,
Ms. Martinez=s counsel
argued that by its pleadings, Dillard=s
had judicially admitted that it has the right to modify or amend its
arbitration agreement with Ms. Martinez, without notice or consent.  A judicial admission is a formal waiver of
proof that dispenses with the production of evidence on an issue and bars the
admitting party from disputing it.  Lee
v. Lee, 43 S.W.3d 636, 641 (Tex.App.--Fort Worth 2001, no pet.).  As long as the statement stands unretracted,
it must be taken as true; it is binding on the declarant and he cannot
introduce evidence to contradict it.  Id.  The elements required for a judicial
admission are:  (1) a statement made
during the course of a judicial proceeding; (2) that is contrary to an
essential fact or defense asserted by the person making the admission; (3) that
is deliberate, clear, and unequivocal; (4) that, if given conclusive effect,
would be consistent with public policy; and (5) that is not destructive of the
opposing party=s theory
of recovery.  Id. at 641-42.  Counsel=s
statements on behalf of a client may serve as judicial admissions.  Id. at 641. However, statements made
by a party or his counsel in the course of judicial proceedings which are not
based on personal knowledge or are made by mistake or based upon a mistaken
belief of the facts are not considered judicial admissions.  DeWoody v. Rippley, 951 S.W.2d 935,
946 (Tex.App.--Fort Worth 1997, writ dism=d
by agr.). 








We agree with
Dillard=s that
its initial reference to the 2002 Rules in its motion to compel pleading does
not constitute a judicial admission that Dillard=s
reserved the right to amend the rules or that the 2002 Rules of Arbitration
applied to Ms. Martinez.  In its initial
pleading, Dillard=s did not
make a deliberate, clear, and unequivocal statement that it reserved the right
to modify or otherwise amend the parties=
arbitration agreement of 2000.  Further,
Dillard=s later
filed a supplemental motion that asserted its right to arbitration under the
2000 agreement and during the hearing on the matter Dillard=s represented to the court that it now
sought arbitration under the 2000 Rules of Arbitration.  We conclude that Dillard=s established that the parties= entered into a valid written agreement
to arbitrate certain claims under the 2000 Rules of Arbitration.

Scope
of the Arbitration Agreement








To determine
whether a claim falls within the scope of an arbitration agreement, we focus on
the factual allegations of the complaint, rather than the legal causes of
action asserted.  Prudential Secs.
Inc., 909 S.W.2d at 900.  If the
facts alleged Atouch
matters,@ have a Asignificant relationship@ to, are Ainextricably
enmeshed@ with, or
are Afactually
intertwined@ with the
contract that is subject to the arbitration agreement, the claim will be
arbitrable.  Pennzoil Co. v. Arnold
Oil Co., Inc., 30 S.W.3d 494, 498 (Tex.App.--San Antonio 2000, orig.
proceeding).  However, if the facts
alleged in support of the claim stand alone, are completely independent of the
contract, and the claim could be maintained without reference to the contract,
the claim is not subject to arbitration. 
Id.  Under the Federal
Arbitration Act, any doubts as to whether a claim falls within the scope of the
agreement must be resolved in favor of arbitration.  Prudential Secs. Inc., 909 S.W.2d at
899.  A[A]
court should not deny arbitration >unless
it can be said with positive assurance that an arbitration clause is not
susceptible of an interpretation which would cover the dispute at issue.=@
Prudential Secs., Inc., 909 S.W.2d at 899, quoting Neal v.
Hardee=s Food
Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990).

Here, the 2000
Rules of Arbitration provided that AArbitration
applies to the following claims over the reasons leading to separation and, in
addition, once a loss of employment occurs, and only in that circumstance, it
also applies to the following claims, timely made, which could have arisen out
of the associate=s
employment:

                                                              .               .               .

 

Violations of any other federal, state,
county, municipal or other governmental, constitution, statute, ordinance,
regulation, public policy or common law, affecting economic terms of
employment.

 

Personal injuries arising from a
termination, except those covered by workers=
compensation.

 








Dillard=s argues that Ms. Martinez=s defamation claim falls within the
scope of arbitrable claims, specifically for personal injury claims arising
from a termination and for violations of common law affecting the economic
terms of employment.  With respect to the
nature of Ms. Martinez=s
claim, Dillard=s asserts
that the tort of defamation falls within the scope of arbitrable claims because
Ms. Martinez alleged she suffered actual damages for A[s]hame
and humiliation, emotional distress, and other psychological damages,@ A[i]njury
to her reputation,@ and A[l]oss of earnings and earning capacity
. . . .@  However, merely pointing to the relief sought
does not resolve the matter of whether the parties intended for defamation
claims to be covered under the terms A[p]ersonal
injuries arising from a termination . . . .@  Following oral argument and at the Court=s direction, the parties submitted
letter briefs on relevant Texas case law on defamation as a form of personal
injury.  In so doing, Dillard=s has directed our attention to several
cases, which support classification of a defamation claim as a personal
injury.  See Brewster et al. v. Baker
et al., 139 S.W.2d 643, 645 (Tex.Civ.App.--Beaumont 1940, no writ)(ADamage to character as the result of
slander or libel is a personal injury.@);
International & G.N. RY. Co. v. Edmundson, 185 S.W. 402, 405
(Tex.Civ.App.--San Antonio 1916), rev=d
on other grounds by 222 S.W. 181 (Tex.Com.App. May 26, 1920 )(AInjury to character or good name is a
personal injury.@); Houston
Printing Co. v. Dement et al., 18 Tex.Civ.App. 30, 33-34, 44 S.W. 558, 560
(Tex.Civ.App. Jan. 27, 1898, writ refused)(A[I]njuries
to the reputation and to the health have ever been classed and treated by law
writers as personal injuries.  . . .  Injuries which affect the personal security
are injuries against the life, the limb, the body, the health, or the
reputation of the individual.@);
see also McNeill v. Tarumianz, 138 F.Supp. 713, 716 (D.C. Del. 1956)(The
generally accepted concept of a Apersonal
injury@ includes
injuries to the reputation. ).  We agree
that prior courts have broadly construed the term Apersonal
injury@ in
various statutes to include defamation, and thus have not limited the term to
bodily injury as it is commonly understood in modern parlance.  However, in examining the term A[p]ersonal injuries arising from a
termination, except those covered by workers=
compensation,@ in the
context of the whole instrument, it is clear that the parties= intent was to cover bodily injuries
other than those included in workers=
compensation coverage.








In addition, we
find that the defamation claim does not fall within the scope of arbitrable
claims as a violation of common law Aaffecting
economic terms of employment,@
as nothing asserted in the defamation claim touched on issues generally
regarded as economic terms of employment, such as wage levels, overtime pay,
and so forth.  Since Ms. Martinez=s defamation claim did not fall within
the scope of the 2000 Rules of Arbitration, we cannot conclude that the  trial court abused its discretion by denying
the motion to compel arbitration.

For the reasons
stated herein, the petition for writ of mandamus is denied. 

 

 

 

March
3, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

Larsen, J., Not Participating











[1]
The 2002 Rules of Arbitration expressly include:  AAny
common law claim, including but not limited to defamation, tortious
interference, intentional infliction of emotional distress.@ While the 2000 Rules of Arbitration
include:  APersonal
injuries arising from a termination, except those covered by workers= compensation.@





[2]
The following exchange is the extent of Mr. Clauser=s
testimony concerning the applicability of the modified plan to existing
employees:

 

Q.        Now, when Dillard=s
made those changes in the 9/17/02 agreement, what announcement did they make of
what they were doing, or what notice did they give, or what agreement did they
obtain?

 

A.        As far as I know, there were none.  They were just going forward.





[3]
Even if Dillard=s had in
fact modified the 2000 arbitration agreement it had entered with Ms. Martinez,
without notice or her consent, and had attempted to enforce the modified
agreement, there is nothing in the agreement that provides for unilateral
modification.  Under such circumstances,
Dillard=s would have
been doing what it had no contractual right to do, and thus be in breach of the
original agreement.