# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2012

No. 11-20511
Summary Calendar

Lyle W. Cayce
Clerk

STANWOOD BOOM WORKS, LLC,

Plaintiff-Appellant

v.

BP EXPLORATION & PRODUCTION, INC.,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-11-CV-19

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

The issue presented in this appeal is whether there was an enforceable contract between appellant and appellee. BP Exploration & Production, Inc. ("BP") drafted a purchase order and sent it to Stanwood Boom Works, LLC ("Stanwood"). Stanwood informed BP that Stanwood required BP's signature prior to moving forward, and Stanwood added a signature block for BP. BP never signed it. The district court ruled that there was no contract and no claim

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20511

for promissory estoppel. The district court further ruled that Stanwood is not entitled to additional discovery to discern the intent of the parties. We AFFIRM.

## Facts and Procedural History

### A.   Pre-Purchase Order Negotiations

In June 2010, BP began negotiating with Stanwood for the potential purchase of containment boom. Before BP even considered purchasing Stanwood's containment boom, BP inspected and assessed Stanwood's manufacturing processes. During this assessment, BP found that Stanwood's boom did not meet BP's typical requirements. By July 1, 2010, Stanwood requested that BP make an exception to its requirements. The next day – July 2, 2010 – Stanwood e-mailed BP its pricing per foot and its current capacity for production of boom. However, on July 5, 2010, BP rejected Stanwood's price. Later that same day, Stanwood provided another quote to BP. Stanwood did not lower its price. Over the next two days, Stanwood and BP continued to negotiate a price. When the parties neared an agreement on price, Stanwood raised other terms to be discussed further. On July 7, 2010, Stanwood insisted on a purchase order before going forward, and BP reiterated that no deal had yet been approved. On July 8, 2010, Stanwood requested a conference call to negotiate the terms and conditions further, including terms regarding the warranty on product clause, the cancellation provision, the penalty fees clause, the delivery schedule and the renewal portion. Stanwood communicated these changes to BP. BP replied that same day that the new terms needed to be approved by management. Stanwood then required either BP's signature or money down as consideration for any future contract.

### B.   Purchase Order Negotiations

On July 8, 2010, BP first sent a purchase order – titled "BP-DIS-0022 Rev. 0" – to Stanwood. Upon review, Stanwood uncovered several objectionable terms that warranted more negotiations. Thus, Stanwood refused to execute it.

No. 11-20511

On July 9, 2010, Stanwood and BP held another telephone conference. BP specifically informed Stanwood that it could not seek authority to enter into the purchase order until after Stanwood signed.

On July 10, 2010, BP emailed another purchase order – titled "BP-DIS-0022 Rev. 1" – to Stanwood. Stanwood signed the purchase order and wrote in a signature block for BP. Daniyal Siddiqui, a Purchasing Specialist at BP, responded that he did not have approval for the appropriate signatures from BP. BP never signed the purchase order.

On July 12, 2010 (four days after BP's initial draft purchase order), BP emailed yet another purchase order – titled "BP-DIS-0022 Rev. 2" – to Stanwood. Again, Stanwood wrote in a signature block for itself and for BP, signed the document, and sent it back to BP. BP never signed the purchase order and never purchased boom from Stanwood.

## C.   Procedural History

Stanwood brought suit against BP asserting claims of breach of contract and promissory estoppel. The district court ordered the parties to agree on an exhibit list to use in summary judgment briefing. The district court placed no limitations or restrictions on this agreed exhibit list. Stanwood and BP chose the documents to support their respective summary judgment arguments. Stanwood and BP conferred and agreed on a list, which included email communications between the parties during their negotiations. Stanwood never raised any issues regarding the content of the record. After the parties filed cross motions for summary judgment, the district court granted summary judgment in favor of BP. Stanwood moved for reconsideration, requesting open-ended discovery, document production, and depositions about BP's internal communications, policies, and handling of other purchase orders in its extensive business. The district court denied Stanwood's motion. Stanwood appealed.

No. 11-20511

## Analysis

### A.    Standard of Review

This court reviews summary judgments *de novo*, and applies the same standards as the district court. *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Tex.*, 660 F.3d 235, 238 (5th Cir. 2011). Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*; *see also* Fed. R. Civ. P. 56(a).

### B.    Contract Formation

"When reviewing written negotiations, the question of whether an offer was accepted and a contract was formed is primarily a question of law for the court to decide." *Scaife v. Associated Air Ctr. Inc.*, 100 F. 3d 406, 410 (5th Cir. 1996) (citing *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 769 (1994)). "If an agreement has been reduced to writing, as it was in this case, an assent to the writing must be manifested. Manifestation of assent 'commonly consists of signing and delivery.'" *Scaife*, 100 F.3d at 410-11. *Scaife* involved a proposed agreement to repair and renovate an aircraft. *Id.* The agreement "was revised at least three times and expressly contained signature blocks for the parties." *Id.* at 411. The agreement was never signed, but *Scaife* nonetheless argued it was enforceable against the repair company. *Id.* The district court, "treating the formation of a binding contract as a legal issue for the court to decide," granted summary judgment for the repair company. *Id.* at 409. This court affirmed, holding "that the parties contemplated the formation of a binding agreement to include the signatures of both parties." *Id.* at 411. "No evidence" showed that the defendant "began work on the aircraft or acted in any affirmative manner to assent to the agreement notwithstanding the lack of delivery and formal execution of the contract." *Id.* Thus, "no contract was ever formed and, as a result, summary judgment was appropriate in this case." *Id.*

No. 11-20511

The circumstances are fundamentally the same here, including the suspension of performance by the parties.

Contracts require mutual assent to be enforceable. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). The parties' assent must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it. *Effel v. McGarry*, 339 S.W.3d 789, 792 (2011). Here, the requirements were not met. BP's purchase order was not an offer because BP's signature, after Stanwood's assent, was a condition precedent to contract formation. In order to be an offer, it must reasonably appear that assent is all that is needed to ripen the offer into a contract. *See Crest Ridge Constr. Group, Inc. v. Newcourt Inc.*, 78 F.3d 146, 153 (5th Cir. 1996). "The mere submission of a proposal does not create any contractual obligation on the part of either party." *See Baldwin v. New*, 736 S.W.2d 148, 150 (1987) (holding that proposals are not offers). In the instant case, BP required Stanwood's signature before it sought management approval, and Stanwood required BP's signature before it would start delivery. *See Axelson, Inc. v. McEvoy-Willis*, 7 F.3d 1230, 1233 (5th Cir. 1993) (applying Texas law and holding that price quotation requiring seller to accept order could not be an offer, but only an invitation for an offer); *see also Peterson v. NCNB Tex. Nat'l Bank*, 862 S.W.2d 182, 183 (1993) ("A bid is simply an offer and does not alone create a contract."). Because BP's purchase order invited additional negotiating steps, instead of inviting assent, we cannot construe it as an offer. Even assuming BP's purchase order was an offer, Stanwood's response to that offer was not an acceptance because it was not "a definite and seasonable expression of acceptance." Tex. Bus. & Com. Code § 2-207. Although the modern statutory standard for acceptance permits the accepting party to stray somewhat from the offer's terms, the purported acceptance must still be certain enough to evince

mutual assent. Stanwood's act of adding a signature block for BP, considered in the full context of the parties' negotiations, does not evince such assent.

## C.    Promissory Estoppel

Stanwood argues that it relied to its detriment on the belief that BP and Stanwood had formed a contract. Stanwood alleges that its reliance led Stanwood to make raw material procurement preparations and equipment/production investments to ensure that it would be able to start delivering product on day one. However, in an email that Stanwood sent on July 12, 2010 – 10 hours after Stanwood had emailed the purchase order to BP – Stanwood asked BP "[t]o be clear, is our purchase order BP-DIS-0022 signed and emailed 7/12 *valid*?" (Emphasis added.). On July 13, 2010, BP responded:

> As of right now This PO is on Hold. We were unable to get the appropriate signature from BP to continue forward.

The elements of promissory estoppel, or detrimental reliance, are a promise that the promisor can foresee will cause substantial, detrimental reliance by the promisee. *English v. Fischer*, 660 S.W.2d 521, 524 (1983); *see Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (2007). "It is a well-established principle in Texas that 'contract rights cannot be created by estoppel [but estoppel can] prevent a party's conduct and actions from operating as a denial of the right of enforcement of a contractual obligation already created.'" *Oliver Res. PLC v. Int'l Fin. Corp.*, 62 F.3d 128, 131 (5th Cir. 1995). "[E]stoppel does not affirmatively create contract rights." *Id*. at 131, n.5; *First Nat'l Bank of Coleman v. First Nat'l Bank of Brownwood*, 278 S.W. 188, 193-94 (1925); *see Westchester Fire Ins. Co. v. Wagner*, 30 S.W. 959, 961 (1894) ("It would be subversive of one of the fundamental principles governing the law of agency to hold that, when notice of the authority conferred upon an agent is given in writing, persons dealing with him could claim notice to the principal

No. 11-20511

through the agent, in regard to matters about which it is expressly declared that he shall not have power to act.").

Here, BP made no promise for which it should have foreseen reliance. At best, BP indicated that it wanted to purchase boom:

- July 5, 2010: Stanwood sends BP a quote "that will assist your team in presenting the business case to your leadership team for approval."

- July 8, 2010: BP informs Stanwood that it is "still trying to get approval from our Senior Management."

- July 9, 2010: BP informs Stanwood that the purchase order is "back in the approval tunnel" and that it is "in a holding pattern until it comes out."

- July 10, 2010: With more modifications ongoing, BP states, "I am going to get with Matt Pavlas to see about getting it signed before we send it out. I am not entirely sure that may happen."

- July 10, 2010: After another round of negotiations, BP informs Stanwood to sign the deviation request and "get it back to me for Delegation of Authority Approval which will happen Monday."

- July 12, 2010: BP sends Stanwood an amended purchase order, which Stanwood must sign before BP.  Stanwood, knowing it does not have a deal, responds with a "signed PO . . . which rescinds our PO and commitments in BP DIS-0022," and instructs that "[w]e will need this signed as you noted below by BP and returned to us to release shipment of the product today."

- July 13, 2010: BP informs Stanwood, "As of right now This PO is on Hold. We were unable to get the appropriate signatures from BP to continue forward."

Even in the most favorable light, these communications reflect continued negotiations that required BP's Purchasing Specialist to seek approval from his management before BP could execute any agreement.  The very nature of BP's

7

representations that it needed approval from BP management in order to sign the purchase order meant that BP's Purchasing Specialist had no authority to make a binding promise that it would be signed.

## D.    Additional Discovery Unnecessary

Stanwood argued that further discovery would reveal whether BP intended to be bound, and what BP thought of Stanwood's requirement for signatures. Procedurally, Stanwood was required to: (1) request the extended discovery before the court's ruling on summary judgment; (2) place the district court on notice that further discovery pertaining to the summary judgment motion was being sought; and (3) demonstrate to the district court with reasonable specificity how the requested discovery pertains to the pending motion. *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1155-56 (5th Cir. 1993). Stanwood did none of these things. Stanwood argued for additional discovery for the first time after summary judgment was granted, and therefore cannot complain that the opportunity for additional discovery was inadequate. *See Walls v. Gen. Motors, Inc.*, 906 F.2d 143, 146-47 (5th Cir. 1990). Thus, the district court properly denied Stanwood's motion.

## Conclusion

There was no contract. There were only negotiations and proposals. BP sent Stanwood a draft purchase order. Negotiations followed in which Stanwood insisted that it would not move forward without a signed contract. Likewise, there was no promissory estoppel, because the party, here Stanwood, which is relying on the informal indication is the party that insisted that it had to be documented with a signed contract. AFFIRMED.