17-3370 (L)
*Fin. Casualty & Surety, Inc. v. Zouvelos*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of July, two thousand nineteen.

Present:
> DENNIS JACOBS,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> > *Circuit Judges*.

---

FINANCIAL CASUALTY & SURETY, INC.,

> *Plaintiff-Counter-Defendant-Appellee*,

v.                                                                17-3370; 18-1670

GEORGE ZOUVELOS, ANASTASIA MANCINI,

> *Defendants-Counter-Claimants-Appellants*.

---

For Plaintiff-Counter-Defendant-
Appellee:                              BRADFORD W. IRELAN, Irelan McDaniel P.L.L.C., Houston, TX.

For Defendant-Counter-Claimant-
Appellant Zouvelos:                    Pamela S. Roth, Esq., Brooklyn, NY.

1

For Defendant-Counter-Claimant-
Appellant Mancini:

SANFORD F. YOUNG, Law Offices of Sanford F. Young, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.

Defendants-Counter-Claimants-Appellants George Zouvelos ("Zouvelos") and Anastasia Mancini ("Mancini") (collectively, "Defendants") appeal from a judgment of the United States District Court for the Eastern District of New York, entered May 4, 2018 following a bench trial, holding them jointly liable for $242,665 in damages, $554,030 in attorney's fees, $19,629.78 in costs, and $76,720.97 in prejudgment interest to Plaintiff-Counter-Defendant-Appellee Financial Casualty & Surety, Inc. ("FCS") on its contract claims. *See* Special Appendix ("SPA") at 55. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**Validity of the Agreement**

FCS, a Texas-based surety company, sued Defendants under a "Retail Producer Bail Bond Agreement," dated July 15, 2010, signed by both Zouvelos as its bail bond agent or "Producer" and his wife Mancini as "Producer-Indemnitor" (the "2010 Agreement," or "Agreement"), to recover damages stemming from bonds written by Zouvelos as FCS's agent. *See* Joint Appendix ("J.A.") 569-77. Defendants first raise a variety of arguments against the validity of the 2010 Agreement including, among others, FCS's lack of signature prior to the

2

Agreement's cancellation, alleged repudiation by FCS, and either lack or failure of consideration.

Like the district court, we see no merit in these challenges. "The issue of whether the parties required that [an] agreement be signed to be considered binding is one of intent, and, therefore, the issue is normally a fact question for the jury to decide." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996); *see also Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955) ("So far as the common law is concerned, the making of a valid contract requires no writing whatever; and even if there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent." (quoting Corbin on Contracts)).[1] Nonetheless, "[w]hen reviewing written negotiations, the question of whether an offer was accepted and a contract was formed is primarily a question of law for the court to decide." *Scaife*, 100 F.3d at 410. We agree with the district court that no signature by FCS was required to make the 2010 Agreement effective. Defendants analogize this case to *Scaife*. In that case, however, there was a long history of negotiations between the parties, at which point one party refused to sign the final draft of the agreement as modified. *See id.* Here, FCS provided the Agreement, which Defendants signed, with no modifications. And under Texas law, parties may "act[] in any affirmative manner to assent to the agreement notwithstanding" the lack of signatures on such an agreement. *Id.* at 411; *see also Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454 (5th

---

[1] The 2010 Agreement has a choice of law clause explaining that "the Agreement is to be interpreted in accordance with the laws of the State of Texas, where [FCS] is based, or of the Producer's home state." J.A. 575. When FCS first brought this case in the Southern District of Texas, the district court judge determined that Texas law applied; after transfer, the district court in the Eastern District of New York continued to apply Texas law, a decision the parties do not challenge before us. As such, we also apply Texas law.

3

Cir. 2013) ("[B]lank signature lines are not proof, by themselves, that the parties required formal signatures for a contract to be binding.").

Defendants next argue that FCS repudiated the 2010 Agreement. "To constitute a repudiation, a party to a contract must have absolutely and unconditionally refused to perform the contract without just excuse." *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App. 2003). Defendants' repudiation arguments are bare-bones and conclusory, contending only that by canceling Zouvelos's agency relationship, FCS's conduct "show[ed] a fixed intention to abandon, renounce, and refuse to perform the contract." Mancini Br. 31. However, this contention ignores language in the 2010 Agreement that either party "may terminate this Agreement, with or without cause, upon their written notice of their desire to terminate the Agreement." *See* J.A. 576. Given that the Agreement expressly provided for FCS's right of termination, its choice to exercise that right in this case cannot be deemed a repudiation.

Lastly, Defendants argue that the 2010 Agreement is invalid either because it is not supported by consideration or because of a subsequent "failure of consideration." "Consideration is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Under Texas law, "[a]ll written contracts, including guaranty agreements, are presumed, at the outset, to be supported by consideration." *Cortez v. Nat'l Bank of Commerce of Brownsville*, 578 S.W.2d 476, 479 (Tex. Civ. App. 1979). "[F]ailure of consideration occurs when, because of some supervening cause after an agreement is reached, the promised performance fails." *U.S. Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 279 (Tex. App. 2005). We agree with the district court that there was consideration for Mancini's acceptance of the 2010 Agreement: she signed

4

the Agreement so that her husband could continue his relationship writing bonds for FCS, and as the district court noted, "Mancini actively participated in and profited from Zouvelos' bail bond business." SPA 26. And while Zouvelos wrote no new bail bonds under the 2010 Agreement before his agency relationship was terminated, this does not constitute failure of consideration on the part of FCS—as noted above, the language of the 2010 Agreement gives FCS the right to terminate.

**Collateral Shortfall**

Next, Defendants argue that the district court erred when it imposed damages in the amount of $143,850 to compensate FCS for the shortfall between the collateral it collected from Zouvelos and the collateral its records show is owing to third-party indemnitors. The 2010 Agreement requires that Zouvelos "protect, . . . return, . . . and deliver to [FCS] collateral as directed by [FCS]." J.A. 570. Furthermore, Zouvelos is obligated to act as a fiduciary with regard to the collateral he collects, which he must hold in separate accounts apart from any of his own funds. *Id.* The 2010 Agreement also contains a broad indemnification clause requiring Defendants to indemnify FCS not only for all liabilities created by Zouvelos's bonds, but also for "100% of all reasonable costs, expenses, and liabilities that [FCS] may sustain or incur in connection with [Zouvelos's] performance of [his] bail bond business." *Id.* at 572.

It is undisputed that Zouvelos misappropriated collateral in violation of his obligations under the 2010 Agreement. Furthermore, as a result of Zouvelos's breach, FCS has been required to undertake extensive investigation of its own records—and Zouvelos's, to the extent that he kept them and has turned them over—in order to understand how much collateral it has and how much it *should* have. The money FCS holds belongs to third-party indemnitors who received bail bonds from Zouvelos; as such, to return the money to its rightful owners, FCS will

5

be required to undertake further investigation to find those indemnitors, as evidenced by its proposed plan to the district court. As noted above, Defendants are required under the 2010 Agreement to indemnify FCS for any such payments it makes to the indemnitors it finds. Given Zouvelos's flagrant breach of his contractual obligations and the effort unwinding Zouvelos's misconduct has caused FCS to expend, we see no error in the district court's decision to award damages to compensate FCS for the liabilities it may face as it attempts to return collateral to third-party indemnitors going forward.

**Attorney's Fees**

Defendants next argue that the attorney's fees awarded by the district court, $554,030, were "staggering and out of proportion to the simplicity of the case, the damages claimed and awarded and the claimed expertise of FCS's lead counsel." Mancini Br. 41. The 2010 Agreement provides that the "prevailing party" in any litigation between the parties "shall be entitled to recover reasonable attorney's fees and other costs in addition to any other relief granted." *See* J.A. 565. "The awarding of attorneys' fees in diversity cases such as this is governed by state law." *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985). Under Texas law, "[t]he award of attorney's fees generally rests in the sound discretion of the trial court." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Texas courts generally use the "lodestar method," by which the court multiplies the number of reasonable hours spent by counsel by the reasonable hourly rate for such work to come up with a "base fee or lodestar," which then may be adjusted up or down to reach the "reasonable fee" for the case. *Id.* at 760. While Texas courts consider a variety of factors when determining the reasonableness of fees, "it is well established that the most critical factor in determining an award of attorneys' fees is the degree of success obtained" by the prevailing party. *Northwinds*

6

*Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (internal quotation marks omitted).

We see no abuse of discretion in Judge Donnelly's award. She presided over several years of motion practice as well as a two-day bench trial between the parties, and reviewed an affidavit and contemporaneous time records submitted by FCS's lead attorney. The district court used the records put forward by FCS's attorney to calculate the lodestar, and addressed each of Defendants' arguments. As she noted, "the defendants drove up litigation costs by failing to respond to several discovery requests, asserting excessive document requests of their own, and transferring venue to this Court." SPA 45. As such, we conclude that the award was undoubtedly within the district court's discretion.

**Mancini's Liability**

For herself, Mancini argues that even if the 2010 Agreement is valid, no bail bonds were written pursuant to it and she cannot be held liable for damages arising from bonds written by Zouvelos under earlier agreements. We agree. Although the 2010 Agreement provides that it supersedes and cancels all previous agreements "with respect to or in connection with the subject matter hereof," it does not list what those agreements are. J.A. 575. Furthermore, while the Agreement provides that Mancini will be liable as an indemnitor for all of Zouvelos's bonds, it phrases such obligations in the present tense, suggesting that it is only bonds executed *going forward* that will be covered. *See id.* at 569 (providing that Mancini is liable "regardless of who actually *executes* said bonds" (emphasis added)). Given the strict construction afforded to agreements to indemnify under Texas law, we cannot conclude that the 2010 Agreement stretches as far as FCS suggests. *See Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App. 1992) ("[I]ndemnity agreements are strictly construed in favor of the

7

indemnitors . . . ."); *see also Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978) ("[A] guaranty agreement is strictly construed and may not be extended beyond its precise terms by construction or implication."). We find no basis by which to hold Mancini jointly liable: no bonds were written under the 2010 Agreement, and FCS's damages are all based on bonds written by Zouvelos under his previous agreements with FCS. Accordingly, we reverse the district court to the extent it held Mancini jointly liable for any of FCS's damages.

We have considered Defendants' remaining arguments and find them to be without merit.[2] Accordingly, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] As to Zouvelos's counter-claim for $63,802.50 'for expenses associated with mitigation or loss on outstanding FCS bonds,' Zouvelos Br. 53, FCS cites a portion of the 2010 Agreement providing that "Producer shall bear any and all expenses incurred in the conduct of Producer's business." J.A. 569. Zouvelos does not counter this bar to his recovery, nor does he explain why the district court should have awarded him funds based on contracts that the New York Department of Financial Services deemed "fraudulent and improper." SPA 29. As such, we conclude that the district court was correct not to resurrect Zouvelos's previously-dismissed counter-claim.

8